Duval & Stachenfeld LLP
Attorneys for Plaintiff
By: Allan N. Taffet, Esq. (AT-5181)
300 East 42nd Street, 3rd Floor
New York, NY 10017
Tel. No.: (212) 883-1700

**04 CV 5139**

RECEIVED
JUN 29 2004
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
VIANT CAPITAL LLC,                                  :
                                                    :
                              Plaintiff,            :     **COMPLAINT**
                                                    :
              -against-                             :     04 Civ.      (    )
                                                    :
CONVERSION SERVICES INTERNATIONAL, INC.,            :
                                                    :
                              Defendant.            :
                                                    :
------------------------------------------------------------------x

         Plaintiff Viant Capital LLC (hereinafter, "plaintiff" or "Viant"), by its attorneys,

Duval & Stachenfeld LLP, for its complaint against defendant Conversion Services

International, Inc. (hereinafter, "defendant," "CSI" or the "Company"), alleges:

### JURISDICTION AND VENUE

         1.      This court has jurisdiction over all claims based on diversity of citizenship

pursuant to 28 U.S.C. § 1332. Plaintiff Viant is a California limited liability company with

its principal place of business in San Francisco, California and a business office in New

York, New York. Upon information and belief, defendant CSI is a Delaware corporation

with its principal place of business in New Jersey. The matter in controversy exceeds

$75,000.00, exclusive of interest and costs.

2.     This court has personal jurisdiction over the defendant pursuant to New York CPLR § 301 and § 302 and Fed. R. Civ. P. 4(k)(1)(A), and pursuant to the Agreement (as defined below) in which it was agreed that "the parties hereby submit to the jurisdiction of and venue in the federal courts located in the city of New York, NY in connection with any dispute related to this Agreement, and transaction contemplated hereby, or any other matter contemplated hereby."  Upon information and belief, the defendant also transacts business in New York and regularly does or solicits business, or engages in a persistent course of conduct in New York, derives substantial revenue from goods used or services rendered in New York, and derives substantial revenue from interstate or international commerce.

3.     Venue is also proper in the Southern District of New York pursuant to the written contract whereby defendant CSI agreed to submit any controversy arising from the Agreement to the federal court in this district, as set forth in ¶ 2 above, and pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## THE PARTIES

4.     Plaintiff Viant is a limited liability company organized and existing under the laws of California with its principal place of business in San Francisco, California, and a business office in New York, New York.

5.     Upon information and belief, defendant CSI is a corporation organized and existing under the laws of Delaware with its principal place of business in New Jersey.

## FACTUAL ALLEGATIONS

6.     On or about February 18, 2004, Viant and CSI entered into a duly executed written contract (the "Agreement"), whereby CSI engaged Viant to "act as financial advisor

2

and exclusive financing agent" for CSI "in seeking, arranging, negotiating and generally advising with respect to the placement of approximately $10 million in securities in a Private Investment in Public Equities transaction" (the "PIPE Transaction"). (Attached hereto as Exhibit A is a true and correct copy of the Agreement, the terms of which are incorporated into this complaint).

7.      Pursuant to the Agreement, Viant was to endeavor to "obtain one or more commitments for the PIPE Transaction" (individually, a "Commitment") from financial institutions or other potential investors. In addition, Viant was granted the exclusive right and authority to perform a range of services, including: assisting the Company in the "preparation of business materials" that included "select business and financial information about the Company and a description of the proposed PIPE Transaction"; contacting and seeking "to elicit interest from one or more Investors"; coordinating "inquiries from and assist[ing] in the preparation of additional Documents providing such information and analyses as may be requested by Investors"; advising CSI as to the "procedures to obtain a favorable PIPE Transaction" and assisting CSI "in evaluating and negotiating the terms and conditions of any Commitment"; and assisting CSI "in closing the PIPE Transaction after Commitments [were] procured." See Agreement, p. 1-2, Section I.

8.      In return for the performance of these services, the Agreement specifically provided the compensation that Viant would receive from CSI, the essential terms of which are as follows:

> (a) An initial fee (the "Retainer") of $10,000, payable in cash and due upon the execution of the Agreement.
>
> (b) An advisory fee (the "Advisory Fee") of $75,000 payable in the Company's shares and due upon the execution of th[e] Agreement.

(c)  A contingent placement fee (the "PIPE Placement Fee") consisting of:
(i)   a cash fee equal to the greater of $350,000 or a percentage ("Percentage") of the total proceeds raised through the PIPE Transaction (including amounts sold by the Selling Stockholders) except for the portion of the total proceeds raised from the Identified Investors (listed in Attachment B [to the Agreement]) on which the fee shall be 2.5% of the  proceeds raised from the Identified Investors, and

(ii)   an additional fee payable in securities of the identical type the Company issues and/or are sold in the PIPE Transaction (or a security with substantially identical terms) ("the Warrants") such that the aggregate fair market value, as determined in the PIPE Transaction, of the securities purchasable under the Warrants equals 2.0% the total proceeds raised in such sale.

See Agreement, p. 3-4, Section III (A).

9.     Additionally, the Agreement provided that CSI would be responsible for all attorneys' fees and costs incurred by Viant, if necessary, to collect the fees and compensation set forth above in ¶ 8.  More specifically, the Agreement stated:

If either the Retainer, the Advisory Fee or the PIPE Placement Fee are not fully paid when due, the Company agrees to pay all costs of collection or other enforcement of Viant's rights hereunder, including but not limited to attorneys' fees and expenses, whether collected or enforced by suit or otherwise. The PIPE Placement Fee is not negotiable and is not subject to any reduction, set-off, counterclaim or refund for any reason or matter whatsoever.

See Agreement, p. 5, Section III (B).

10.     Under the Agreement, the engagement of Viant's services would continue until the earlier of 3 months from the date of the Agreement or until the Agreement was otherwise terminated.  Notwithstanding any such expiration or termination, the Agreement specifically provided that the compensation and cost of collection provisions of Section III (A) and Section III (B), respectively, among other specified provisions, "shall survive any expiration or termination of this Agreement." See Agreement, p. 5, Section IV (A).  At no

4

time was the Agreement terminated and so it expired in accordance with its terms on May 18, 2004.

11.     On or about April 29, 2004, during the terms of Viant's engagement under the Agreement, CSI raised $2,000,000 in capital through the sale of equity pursuant to a private offering.

12.     On or about May 21, 2004, CSI filed a Quarterly Report on Form 10-Q with the United States Securities and Exchange Commission ("SEC"), confirming CSI's raising of equity capital from a private offering during the term of the Agreement.  The Form 10-Q specifically stated in "Note 11 - Subsequent Events" that:

> On April 29, 2004, the Company obtained a $2,000,000 equity investment from a private investor in exchange for 16,275,000 shares of CSI common stock.  Subsequent to this transaction, the Company has 689,275,000 shares outstanding.

13.     In addition to CSI's admission in the Form 10-Q, on or about May 6, 2004, CSI filed a registration statement with the SEC on Form SB-2 (the "Registration Statement"), containing similar admissions of the raising of capital from a private offering.  Specifically, the Registration Statement stated:

> In May 2004, we raised $1,953,000 pursuant to a private offering.  Pursuant to the private offering, participating investors received 16,275,000 shares of our common stock (at a purchase price of $0.12 per share) and 4,068,750 warrants to purchase shares of our common stock at $0.14 per share.  These warrants expire in May 2007.

14.     Furthermore, another section of the Registration Statement stated:

> In May 2004, we raised an aggregate of $1,953,000 pursuant to a private offering, in which investors purchased units consisting of shares of our common stock and warrants to purchase shares of our common stock.  Such investors include three selling stockholders set forth in the Selling Stockholders section of this Registration Statement.  Pursuant to the private offering, participating investors received 16,275,000 shares of our common

5

stock (at a purchase price of $0.12 per share) and 4,068,750 warrants to purchase shares of our common stock at $0.14 per share. Those warrants expire on May 2007.

15.     The Agreement set forth Viant's exclusive rights in connection with the PIPE Transaction and the identification of investors. Specifically, the Agreement stated that Viant was:

> granted the sole and exclusive right and authority to locate PIPE Transaction sources and to obtain Commitments during the term of this Agreement. If the Company accepts or otherwise enters into any binding agreement relating to a Commitment during the term of this Agreement and the Company closes the PIPE Transaction under such Commitment, whether or not such PIPE Transaction or Commitment was arranged through Viant (although such closing may occur subsequent to the expiration of this Agreement), the Company expressly agrees that Viant's services have been fully performed as outlined herein, and the Company shall pay Viant compensation as outlined herein. In order that the Company and Viant can best coordinate efforts to obtain a Commitment satisfactory to the Company, the Company agrees that it will not initiate or engage in any discussions relating to a PIPE Transaction during the term of this Agreement except through Viant. (Emphasis added.)

See Agreement, p. 2, Section II (C).

16.     By CSI's own admissions contained in its public filings, CSI has breached the Agreement with Viant. As set forth in ¶ 15 above, the Agreement specifically stated that CSI agreed not to initiate or engage in any discussions relating to the PIPE Transaction during the term of the Agreement except through Viant. However, even if CSI accepted or entered into any binding agreement relating to a Commitment, "whether or not such Commitment was arranged through Viant," CSI expressly agreed that "Viant's services have been fully performed" and that CSI "shall pay Viant compensation" as set forth in the Agreement.

17.     Indeed, CSI obtained a $2,000,000 equity investment in exchange for shares of the Company's common stock. Thus, pursuant to the express terms of the Agreement, Viant is due compensation provided by the Agreement, specifically the PIPE Placement Fee as set

forth in Section III (A) (c) -- consisting of a cash fee of $350,000 and entitling Viant to 325,000 of the Warrants at an exercise price of $0.14. The PIPE Placement Fee was "due and payable to Viant on the date(s) of the closing(s) or funding(s) of the PIPE Transaction." CSI has failed to pay the PIPE Placement Fee owed to Viant.

18.     Additionally, CSI has failed to pay the $75.000 Advisory Fee, payable in CSI's shares, that was due upon the initial signing of the Agreement pursuant to Section III (A) (b).

19.     To date, despite written demands, the PIPE Placement Fee and the Advisory Fee have not been remitted to Viant.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

20.     Plaintiff Viant realleges paragraphs "1" through "19" of this complaint as fully set forth herein.

21.     Viant entered into the Agreement with CSI for valuable consideration, Viant has fully performed its obligations under the Agreement and all conditions to payment of the PIPE Placement Fee and Advisory Fee have been met.

22.     Defendant CSI has failed to perform its obligations under the Agreement. Specifically, despite due demand, CSI has failed to remit the PIPE Placement Fee and the Advisory Fee due and owing to Viant under the Agreement.

23.     The terms of the Agreement expressly set forth that the $75,000.00 Advisory Fee was due and payable to Viant upon the signing of the Agreement. Furthermore, the Agreement expressly set forth that the PIPE Placement Fee is due and payable to Viant based upon CSI's raising of funds during the term of Viant's engagement. Indeed, CSI confirmed

such occurrences in its May 21, 2004, Form 10-Q filing and also in its May 6, 2004,

Registration Statement filing.

24.     By reason of CSI's breach of the Agreement, plaintiff Viant has sustained

damages to be established at trial, plus interest from April 29, 2004, and has incurred

attorneys' fees and expenses in connection with this action.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment)**

25.     Plaintiff Viant realleges paragraphs "1" through "19" of this complaint as if

fully set forth herein.

26.     CSI has had the benefit of the services Viant performed under the Agreement.

27.     Such services were worth the agreed-upon amounts and warrant the

compensation owed to Viant.

28.     CSI has wrongfully refused to remit any of the PIPE Placement Fee or any of

the Advisory Fee due and owing under the Agreement, despite due demand, causing Viant to

lose the use of those moneys due and owing, and requiring Viant to incur attorneys' fees and

costs to recover such compensation due under the Agreement.

29.     By reason of the foregoing, CSI has been unjustly enriched at the expense of

plaintiff Viant.

**THIRD CLAIM FOR RELIEF**
**(Quantum Meruit)**

30.     Plaintiff Viant realleges paragraphs "1" through "19" and "25" through "29"

of this complaint as if fully set forth herein.

31.     At the specific request of CSI, Viant rendered services to CSI and expended moneys on behalf of CSI in connection with Viant's role as financial advisor and exclusive financing agent for CSI pursuant to the Agreement.

32.     CSI received the benefit of Viant's actions in connection with the PIPE Transaction.

33.     The fair and reasonable value of the benefits received by CSI was that which was expressly stated in the Agreement, or alternatively, the cash amount of at least [$445,500] plus statutory interest thereon commencing April 29, 2004.

34.     Viant has not been paid for the services performed on CSI's behalf.

35.     By reason of the foregoing, defendant CSI is liable to plaintiff Viant for the payment of the compensation specified in the Agreement in return for services rendered to CSI, together with all expenses incurred on CSI's behalf in connection with the PIPE Transaction, including all attorneys' fees and expenses incurred in this action, under the doctrine of quantum meruit.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendant as follows:

1.    Awarding Viant damages to be established at trial plus statutory interest

thereon commencing April 29, 2004.

2.    The costs and disbursements of this action and such other relief as is just,

including all attorneys' fees incurred by plaintiff.

Dated:   New York, NY
          June 2 , 2004

Duval & Stachenfeld LLP
Attorneys for Plaintiff
Viant Capital LLC

By:

Allan N. Taffet, Esq. (AT-5181)
A member of the firm
300 East 42nd Street, 3rd Floor
New York, New York 10017
Tel. No.:  (212) 883-1700

# EXHIBIT A

Viant Capital LLC
1120 Avenue of The Americas, 4th Floor,
New York, NY 10036
Tel: (212) 626-6901 | Fax: (212) 626-6906

Pat La Vecchia
Managing Director
PLavecchia@ViantGroup.com


Mr. Scott Newman
President and Chief Executive Officer
Conversion Services International, Inc.
100 Eagle Rock Avenue
East Hanover, NJ 07936

Dear Mr. Newman:

This letter (this "Agreement") is to confirm our understanding of the basis upon which Viant Capital LLC ("Viant") is being engaged during the term of this agreement to act as financial advisor and exclusive financing agent for Conversion Services International, Inc. (together with any present and future subsidiaries and affiliates of Conversion Services International, Inc., the "Company"), in seeking, arranging, negotiating and generally advising with respect to the placement of approximately $10 million in securities in a Private Investment in Public Equities transaction (the "PIPE Transaction"). The parties acknowledge and agree that, in addition to securities that may be sold by the Company in a PIPE Transaction, existing shareholders of the Company (the "Selling Stockholders") may sell securities to the investor or investors in the PIPE Transaction, which sale or sales shall for all purposes hereof be deemed part of the PIPE Transaction.

## I. Services of Viant

Viant will endeavor to obtain one or more commitments for the PIPE Transaction (individually a "Commitment" and collectively the "Commitments") from one or more financial institutions or other accredited investors (the "Investors"). Investors listed in Attachment B (the "Identified Investors") are to be provided by the Company prior to the execution and as part of this agreement. The major terms of the PIPE Transaction which Viant will seek to obtain will be deemed acceptable to the Company as evidenced by the Company's acceptance of a Commitment. During the term of the Agreement, Viant will perform or cause one or more of its affiliates to perform, and the Company hereby grants Viant and its affiliates the exclusive right and authority to perform, the following services:

> A.       Assist the Company in the preparation of materials (collectively, the "Documents") that include select business and financial information about the Company and a description of the proposed PIPE Transaction with proposed terms and conditions, and other relevant information as Investors may request. The Documents shall not contain any information that is not publicly available via the Company's filings with the Securities and Exchange Commission, with the exception of financial projections provided by the Company.  The Company shall have final approval and be responsible for determining that the Documents do not contain non-public information before any Documents are sent to Investors.

> B.       Contact and seek to elicit interest from one or more Investors, approved by the Company, to participate in the PIPE Transaction. No entity will be contacted by Viant, or be deemed an Investor for the purposes of this Agreement, unless Viant has received prior written approval from the Company allowing Viant to contact such entity.

    C.     Coordinate inquiries from and assist in the preparation of additional Documents providing such information and analyses as may be requested by investors.

    D.     Advise the Company as to the procedures to obtain a favorable PIPE Transaction, and assist the Company in evaluating and negotiating the terms and conditions of any Commitment.

    E.     Assist the Company in closing the PIPE Transaction after Commitments are procured.

## II. Representations, Warranties, Terms and Conditions

The Company hereby represents and warrants to, and agrees with, Viant as follows:

    A.     This Agreement has been duly authorized and represents the legal, valid, binding and enforceable obligation of the Company and that neither this Agreement nor the consummation of the transactions contemplated hereby requires the approval or consent of any governmental or regulatory agency or violates any law, regulation, contract or order binding on the Company. The Company further represents and warrants that the Company will be in all respects qualified and authorized to accept the Commitments being arranged by Viant, provided, however the Company is not obligated to accept any Commitment.

    B.     Viant's services in obtaining the PIPE Transaction are fully performed at the time the Company or Selling Stockholders closes a transaction, except with respect to Viant's fees for a transaction with multiple closings, in which case Viant shall be paid on a pro rata basis simultaneous with each closing.

    C.     Viant is hereby granted the sole and exclusive right and authority to locate PIPE Transaction sources and to obtain Commitments during the term of this Agreement. If the Company accepts or otherwise enters into any binding agreement relating to a Commitment during the term of this Agreement and the Company closes the PIPE Transaction under such Commitment, whether or not such PIPE Transaction or Commitment was arranged through Viant (although such closing may occur subsequent to the expiration of this Agreement), the Company expressly agrees that Viant's services have been fully performed as outlined herein, and the Company shall pay Viant compensation as outlined herein. In order that the Company and Viant can best coordinate efforts to obtain a Commitment satisfactory to the Company, the Company agrees that it will not initiate or engage in any discussions relating to a PIPE Transaction during the term of this Agreement except through Viant.

    D.     If the Company does not accept a Commitment for a PIPE Transaction during the term of this Agreement, then, should the Company accept during the one year period commencing upon termination or expiration of this Agreement and close any Commitment for a private financing from any entity (or any registered or unregistered affiliate thereof) first introduced to the Company by Viant and approved by the Company in writing, the Company expressly agrees that Viant will have fully performed its services and will be entitled to compensation as provided herein for the PIPE Transaction.

    E.     The Company will furnish Viant with all information and material concerning the Company which Viant reasonably requests in connection with the performance of its obligations hereunder. The Company represents and warrants that the information contained in the Documents will, at the time such Documents are provided to Viant, be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such

statements are made. The Company further represents and warrants that any projections provided to Viant or contained in the Documents will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company acknowledges and agrees that in rendering its services hereunder, Viant will be using and relying, without any independent investigation or verification thereof, on all information that is or will be furnished to Viant by or on behalf of the Company and on publicly available information, and Viant will not in any respect be responsible for the accuracy or completeness of any of the foregoing kinds of information, and that Viant will not undertake to make an independent appraisal of any of the assets of the Company. The Company understands that although Viant will have its own counsel and advisors, in rendering services hereunder Viant will also rely upon the advice of counsel to the Company and other advisors to the Company as to legal, tax and other matters relating to the PIPE Transaction.

F.      In connection with engagements of the nature covered by this Agreement, it is Viant's practice to provide for indemnification, contribution, and limitation of liability. By signing this Agreement, the Company agrees to the provisions attached to this Agreement (Attachment A), which provisions are expressly incorporated by reference herein.

G.      The Company shall make or cause to be made state "blue sky" applications in such states and jurisdictions as shall be required by law in connection with the PIPE Transaction. It shall be the Company's obligation to bear all blue sky counsel fees and expenses.

H.      It is understood that the offer and sale of the securities sold in the PIPE Transaction (the "Securities") will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Act"), pursuant to Section 4(2) thereof. The Company will not, directly or indirectly, make any offer or sale of Securities or of securities of the same or a similar class as the Securities if as a result the offer and sale of Securities contemplated hereby would fail to be entitled to the exemption from the registration requirements of the Act provided for in such Section 4(2). The Company represents and warrants that it (i) has not, directly or indirectly, made any offers or sale of the Securities or securities of the same or similar class as the Securities during the six month period ending on the date of this letter, that would cause the PIPE Transaction to fail to be entitled to the exception in such section 4(2), and (ii) has no intention of making an offer or sale of the Securities or securities of the same or similar class as the Securities for a period of six months after completion of the private placement contemplated hereby. As used herein, the terms "offer" and "sale" have the meanings specified in Section 2(3) of the Act.

I.      In connection with all offers and sales of the Securities the Company will;

(a)      not offer or sell the Securities by means of any form of general solicitation or general advertising; and

(b)      not offer or sell the Securities to any person who is not an "accredited investor" as defined in Rule 601 under the Act.

## III. Compensation/Payment for Services Performed

In consideration for Viant's services hereunder, the Company shall compensate Viant as follows:

A.      In consideration for its services in the PIPE Transaction, the Company shall pay or cause Viant to be paid as follows:

(a)      An initial fee (the "Retainer") of $10,000, payable in cash and due upon the execution of this Agreement.  The Retainer shall be deemed earned when paid.

(b)      An advisory fee (the "Advisory Fee") of $75,000 payable in the Company's shares and due upon the execution of this Agreement.  The Company shall file a registration statement with the Securities and Exchange Commission and any applicable state regulatory authority to register all shares issuable to Viant pursuant to this paragraph III.A(b) within ninety (90) days of the final closing of the PIPE Transaction.  The Advisory Fee shall be deemed earned when paid.

(c)      A contingent placement fee (the "PIPE Placement Fee") consisting of

(i) a cash fee equal to the greater of $350,000 or a percentage ("Percentage") of the total proceeds raised through the PIPE Transaction (including amounts sold by the Selling Stockholders) except for the portion of the total proceeds raised from the Identified Investors (listed in Attachment B) on which the fee shall be 2.5% of the proceeds raised from the Identified Investors. The value of Percentage is to be determined by the following schedule:

Definitions:

Average Share Price - the average closing price of the Company's publicly traded common shares for the ten trading days prior to the closing date of the PIPE Transaction

Offering Share Price – the purchase price of a single unit of the securities sold in the PIPE Transaction to be a combination of a single common share and an associated and to be determined amount of warrant coverage per single common share.

Offering Discount ("OD") = (Average Share Price – Offering Share Price) / Average Share Price

| Percentage | Offering Discount ("OD") |
|------------|--------------------------|
| 10% | OD <= 20% |
| 7% | 20% < OD <= 25% |
| 6% | 25% < OD |

If the securities sold in the PIPE Transaction are of a type (as approved by the Company) other than a combination of common and warrants  (inclusive of zero warrants) , Percentage will be equal to 7%.

and

(ii) an additional fee payable in securities of the identical type the Company issues and/or are sold in the PIPE Transaction (or a security with substantially identical terms) ("the Warrants") such that the aggregate fair market value, as determined in the PIPE Transaction, of the securities purchasable under the Warrants equals 2.0% of the total proceeds raised in such sale.

The PIPE Placement Fee is due and payable to Viant on the date(s) of the closing(s) or funding(s) of the PIPE Transaction.

B.      If either the Retainer, the Advisory Fee or the PIPE Placement Fee are not fully paid when due, the Company agrees to pay all costs of collection or other enforcement of Viant's rights hereunder, including but not limited to attorneys' fees and expenses, whether collected or enforced by suit or otherwise. The PIPE Placement Fee is not negotiable and is not subject to any reduction, set-off, counterclaim or refund for any reason or matter whatsoever.

C.      The Company hereby grants Viant a right of first refusal to act as the Company's exclusive placement agent, exclusive financial adviser or in any other similar capacity, on market terms. In the event the Company, any of its subsidiaries or any of its affiliates retains or otherwise uses the services of an investment bank or similar financial adviser to pursue at any time within 3 months of the date hereof a private placement of securities; provided, however, that Viant's right of first refusal is contingent upon the successful completion of the PIPE Transaction. Nothing contained herein, however, constitutes an obligation of Viant to serve as underwriter, placement agent, exclusive financial advisor or in any other similar capacity.

D.      In addition to the fees described in Sections III(A) and III(B) above and the obligation of the Company to pay certain expenses set forth in Section II(F) above, and whether or not any Financing is consummated, the Company will pay all of Viant's reasonable out-of-pocket expenses (including document and presentation material expenses and the fees and expenses of its counsel) as incurred in negotiating the terms of and in carrying out its duties under this engagement. Such out-of-pocket expenses shall be payable as they are incurred upon request by Viant, provided that said expenses will not exceed $12,500 in the aggregate without the Company's prior approval.

E.      Any fee payable under this Agreement shall be reduced by the amount Viant or the Company is required to pay to a third party to consummate any PIPE Transaction. As of the date of this agreement, it is not anticipated that any third party will be involved in the consummation of any PIPE Transaction.

## IV. Miscellaneous

A.      The term of this engagement will continue until the earlier of three (3) months from the date hereof or until terminated in the manner provided for in this Section. Either party may terminate Viant's engagement hereunder at any time by giving the other party at least 30 days' prior written notice. Notwithstanding the foregoing, Viant may terminate this Agreement at any time if (i) it reasonably determines that results from its due diligence review of the Company's business, management and future prospects are unsatisfactory or (ii) its Commitment Committee does not approve proceeding with this transaction. The provisions of Sections II(D), II(E), II (F), II(H), II(I), III (A), III (B) III (C), III(D) and IV(D) hereof shall survive any expiration or termination of this Agreement.

B.      Except as contemplated by the terms hereof or as required by applicable law, Viant shall keep confidential all information provided to it by the Company, and shall not disclose such information to any third party, other than such of its employees and advisors as Viant determines to have a need to know who have executed appropriate confidentiality agreements.

C.      Viant is being retained to act as an independent contractor to serve as financial advisor and financing agent solely to the Company, and it is agreed that the engagement of Viant is not, and shall not be deemed to be, on behalf of, and is not intended to, and will not, confer rights or benefits upon, or create duties of Viant to, any

shareholder or creditor of the Company or upon any other person or entity, except for any written statements provided by Viant for any documents related to the PIPE Transaction. No one other than the Company is authorized to rely upon this engagement of Viant or any statements, conduct or advice of Viant, and no one other than the Company is intended to be a beneficiary of this engagement. All opinions, advice or other assistance (whether written or oral) given by Viant in connection with this engagement are intended solely for the benefit and use of the Company and will be treated by the Company as confidential, and no opinion, advice or other assistance of Viant shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public or other references to Viant (or to such opinions, advice or other assistance) be made without the express prior written consent of Viant.

D.     The Company agrees that, following the closing or consummation of a Financing, Viant has the right to place advertisements in financial and other newspapers and journals at its own expense, describing its services to the Company hereunder, provided that such statements shall not violate any rules or regulations and that Viant will submit a copy of any such advertisements to the Company for its prior approval, which approval shall not be unreasonably withheld.

E.     The Company and Viant represent and warrant that there are no brokers, representatives or other persons which have an interest in any compensation due to Viant from any transaction contemplated herein.

F.     The terms and provisions of this Agreement are solely for the benefit of the Company and Viant and the other Indemnified Persons and their respective successors, assigns, heirs and personal representatives, and no other person shall acquire or have any right by virtue of this Agreement. This Agreement represents the entire understanding between the Company and Viant with respect to the Financings and Viant's engagement hereunder, and all prior discussions are merged herein. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK without regard to such state's principles of conflicts of laws, and may be amended, modified or supplemented only by written instrument executed by each of the parties hereto.

G.     It is understood that Viant's obligation under this Agreement is to use its reasonable efforts throughout the period for which it acts as the Company's exclusive agent as described herein. Viant's engagement is not intended to provide the Company or any other person or entity with any assurances that any Financings or other transactions will be consummated, and in no event will Viant be obligated to purchase Securities for its own account or the accounts of its customers.

H.     The parties hereby submit to the jurisdiction of and venue in the federal courts located in the city of New York, NY in connection with any dispute related to this Agreement, any transaction contemplated hereby, or any other matter contemplated hereby.

I.     Neither party may assign this Agreement or any rights hereunder without the prior written consent of the other party.

If the foregoing correctly sets forth the entire understanding and agreement between Viant and the Company, please so indicate in the space provided for that purpose below and return an executed copy to us, whereupon this letter shall constitute a binding agreement as of the date first above written.

VIANT CAPITAL LLC

By: _____
     Sal La Vecchia
     Managing Director

AGREED:

CONVERSION SERVICES INTERNATIONAL, INC.

By: _____
     Scott Newman
     President and Chief Executive Officer
     Mitch Peipert
     V.P. + CFo

**ATTACHMENT A**

**VIANT CAPITAL LLC**
**INDEMNIFICATION, CONTRIBUTION AND**
**LIMITATION OF LIABILITY PROVISIONS**

(a)     The Company agrees to indemnify and hold harmless Viant and its affiliates and their respective officers, directors, employees and agents, and any persons controlling Viant or any of its affiliates within the meaning of Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934 (Viant and each such other person or entity being referred to herein as an "Indemnified Person"), from and against all claims, liabilities, losses or damages (or actions in respect thereof) or other expenses which (A) are related to or arise out of (i) actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company, its affiliates or the Selling Stockholders or (ii) actions taken or omitted to be taken by an Indemnified Person with the consent or in conformity with the actions or omissions of the Company its affiliates or the Selling Stockholders or (B) are otherwise related to or arise out of Viant's activities on behalf of the Company or in connection with the Financing.  The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses from written statements of Viant or pursuant to clause (B) of the preceding sentence to the extent they are finally judicially determined to have resulted from such Indemnified Person's gross negligence or willful misconduct.  In addition, the Company agrees to reimburse each Indemnified Person for all out-of-pocket expenses (including fees and expenses of counsel) as they are incurred by such Indemnified Person in connection with investigating, preparing, conducting or defending any such action or claim, whether or not in connection with litigation in which any Indemnified Person is a named party, or in connection with enforcing the rights of such Indemnified Person under this Agreement.

(b)     If for any reason the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such claim, liability, loss, damage or expense in such proportion as is appropriate to reflect not only the relative benefits received by the Company and the Selling Stockholders on the one hand and Viant on the other, but also the relative fault of the Company and the Selling Stockholders and Viant, as well as any relevant equitable considerations, subject to the limitation that in any event the aggregate contribution of all Indemnified Persons to all losses, claims, liabilities, damages and expenses shall not exceed the amount of fees actually received by Viant pursuant to this Agreement.  It is hereby further agreed that the relative benefits to the Company and the Selling Stockholders on the one hand and Viant on the other with respect to any transaction or proposed transaction contemplated by this Agreement shall be deemed to be in the same proportion as (i) the total value the transaction or proposed transaction bears to (ii) the fees paid to Viant with respect to such transaction.

(c)     No Indemnified Person shall have any liability to the Company or any other person in connection with the services rendered pursuant to this Agreement, except for any liability for losses, claims, damages or liabilities to the extent they are finally judicially determined to have resulted from such Indemnified Person's gross negligence or willful misconduct or for written statements provided by Viant.

(d)     If indemnification is to be sought hereunder by any Indemnified Person, then such Indemnified Person shall notify the Company of the commencement of any action or proceeding in respect thereof; provided, however, that the failure so to notify the Company shall not relieve the Company from any liability that it may otherwise have to such Indemnified Person.  Following such notification, the Company may elect in writing to assume the defense of such action or proceeding, and, upon such election, it shall not be liable for any legal costs subsequently incurred by such Indemnified Person (other than reasonable costs of investigation) in connection therewith, unless (i) the Company has failed to provide counsel of recognized standing and

Viant Capital LLC                          Page 8 of 8                        Created on 2/4/2004 9:48:00 PM

reasonably satisfactory to such Indemnified Person in a timely manner or (ii) representation of such Indemnified Person by counsel provided by the Company could present such counsel with a conflict of interest.

(e)     The Company agrees that it will not settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought from the Company by any Indemnified Person (whether any Indemnified Person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Indemnified Persons hereunder from all liability arising out of such claim, action, suit or proceeding.

(f)     If any Indemnified Person appears as a witness, is deposed or otherwise is involved in any action relating to or arising from any transaction or proposed transaction contemplated by this Agreement or Viant's engagement hereunder, the Company will reimburse such Indemnified Person for all expenses (including fees and expenses of counsel) incurred by it by reason of it or any of its personnel being involved in any such action.

(g)     The Company waives any right to a trial by jury with respect to any claim or action arising out of this Agreement or the actions of Viant, and consents to personal jurisdiction, service of process and venue in any court in which any claim covered by the provisions of this Attachment A may be brought against an Indemnified Person.

(h)     The provisions of this Attachment A shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, and shall survive the expiration of the term of this Agreement and the closing or consummation of any transaction or proposed transaction contemplated by this Agreement.

**ATTACHMENT B**

**IDENTIFIED INVESTOR LIST**